UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| WILLIE L. SMITH, | ) | Civil Action No.: 4:11-cv-2039-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CITY OF MARION | ) | |
| and RODNEY BERRY; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.     INTRODUCTION

In this action, Plaintiff asserts causes of action for employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq. and the South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. § 1-13-10, et seq. Plaintiff also asserts state common law claims for wrongful discharge in violation of public policy and defamation. Presently before the Court is Defendant Rodney Berry's Motion to Dismiss (Document # 4). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II.    FACTUAL ALLEGATIONS

Plaintiff, a black male, served as Chief of Police for the City of Marion from February 11, 1991 until October 18, 2010. Complaint ¶ 7. Berry, a white male, became Mayor of the City of

Marion on April 21, 2009. Complaint ¶ 4. Shortly after Berry became Mayor, he informed Plaintiff, who was 62 years old at the time, that he planned to terminate Plaintiff because of his age and race and replace him with a younger, white male. Complaint ¶ 9. In early 2010, Plaintiff announced his plans to retire from his position as Chief of Police effective August 11, 2011. Complaint ¶ 10. In September of 2010, Plaintiff was diagnosed with congestive heart failure. Complaint ¶ 11. Plaintiff was hospitalized for congestive heart failure from September 28, 2010, until October 2, 2010. Complaint ¶ 14. Upon his discharge from the hospital, Plaintiff's doctor placed him on medical leave until October 27, 2010. Complaint ¶ 17. On October 18, 2010, while Plaintiff was on medical leave, Defendants terminated Plaintiff from his position as Chief of Police. Complaint ¶ 19. Plaintiff also alleges "the Defendants directed Mr. Smith to institute a ticket quota system, requiring all patrolling officers to issue a set number of tickets for traffic violations per month, regardless of whether such violations occurred. . . . When Mr. Smith refused to implement such a system, the Defendants terminated Mr. Smith." Complaint ¶¶ 72, 74. Finally, Plaintiff alleges Berry "intentionally uttered a false and defamatory statement to third parties when he told several individuals that Mr. Smith 'had not been putting forth full effort in his job for several years.'" Complaint ¶ 78.

### III.   STANDARD OF REVIEW

A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff in any civil action must do more than make mere conclusory statements to state a claim. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 570. The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555.

> Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:
>
> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

## IV.    DISCUSSION

### A.    Individual Liability

#### 1.    Title VII, the ADA and the SCHAL

Berry argues that Plaintiff's claims against him should be dismissed because neither Title VII nor the ADA allow for individual liability. Defendant cites to the Fourth Circuit's opinions in Lissau v. Southern Food Service, 159 F.3d 177, 180 (4th Cir. 1998) and Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) in support of his arguments. Plaintiff argues that the Fourth Circuit's earlier opinion in Paroline v. Unisys Corp., 879 F.2d 100, 104 (4th Cir. 1989), reversed in part, 900 F.2d 27 (4th Cir.1990) (en banc), is still controlling on the issue of individual liability.

Title VII, the Age Discrimination in Employment Act, (ADEA), 29 U.S.C. § 621 et seq., and the ADA each define "employer" as "a person engaged in an industry affecting commerce" who has a certain number of employees and "any agent of such a person." See 42 U.S.C. § 2000e(b) (Title VII); 29 U.S.C. § 630(b) (ADEA); 42 U.S.C. § 12111(5)(A) (ADA).

In addressing a sexual harassment claim under Title VII, Paroline held that individuals could be held personally liable in Title VII cases if they met the statutory definition of employer, which the court construed to include individuals who "serve[] in a supervisory position and exercise[] significant control over the plaintiff's hiring, firing or conditions of employment." Paroline, 879 F.2d at 104.

Five years later, in Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir.1994), the Fourth Circuit addressed the availability of individual liability in an action brought pursuant to the ADEA. After discussing the statutory definition of "employer" and finding little sense to hold a single defendant liable when Congress expressly exempted all employers, corporate, individual or otherwise, from liability if it employed fewer than the requisite number of employees triggering applicability of the ADEA itself, it held an individual supervisor could not be held liable under the ADEA. Id. at 510. The court concluded that the inclusion of "agent" did not signal a congressional desire to impose liability on individual supervisors. Id. Instead, it simply represented "an unremarkable expression of respondeat superior-that discriminatory personnel actions taken by an employer's agent may create liability for the employer." Id. However, the court did limit the holding to employees or agents engaging in "personnel decisions of a plainly delegable character." Id. at 511, n.1.

Subsequent to Birkbeck, the Fourth Circuit again addressed the availability of individual

-4-

liability in Title VII cases in Lissau. There, the court noted its holding in Birkbeck and it's observation that Title VII is the ADEA's "closest statutory kin" and stated that "[t]he Title VII definition of employer must be read in the same fashion as the ADEA definition of employer." Lissau, 159 F.3d at 180. The court concluded,

> reading Title VII to foreclose individual liability represents the only logical extension of Birkbeck. Like the ADEA, Title VII exempts small employers; it would be incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company.

Id. The court further noted that the 1991 amendments to Title VII, which expanded the remedies available to Title VII plaintiffs, further bolstered its conclusion that Congress did not intend for individuals to be liable under the statute. Id. at 180-81 ("These amendments to the remedial scheme thus suggest that Congress only intended employers to be liable for Title VII violations. Nowhere does the [Civil Rights Act of 1991] mention individual liability as an available remedy.").[1]

Relying on McMellon v. United States, 387 F.3d 329, 333 (4th Cir. 2004), Plaintiff argues that reliance on Lissau is in contravention of Fourth Circuit precedent. The undersigned notes that the Fourth Circuit has recognized the holding in Lissau as the appropriate rule of law for individual liability under Title VII. See, e.g., Mikkelsen v. DeWitt, 141 Fed.Appx. 88, 91 (4th Cir. 2005); Shields v. Federal Exp. Corp., 120 Fed.Appx. 956, 960 (4th Cir. 2005); Smith v. Pepersack, 194 F.3d 1305, 1305 (4th Cir. 1999); Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cr. 1999); Smith v. County of Culpepper, Virginia, 191 F.3d 448, 448 (4th Cir. 1999).

The Fourth Circuit addressed individual liability for retaliation claims under the ADA in

---

[1] The court also noted that "every circuit that has confronted this issue since the enactment of the CRA has rejected claims of individual liability." Id. at 181 (citations omitted).

Baird and, relying on the holding in Lissau, concluded that "[b]ecause Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA." Baird, 192 F.2d at 472.  See also Jones v. Sternheimer, 387 Fed.Appx. 366 (4th Cir. 2010) (holding, in an ADA employment discrimination case, that the ADA "do[es] not provide for [a] cause[] of action against defendants in their individual capacities").

Based upon the current state of the law in this circuit and under the facts alleged by Plaintiff in his Complaint, Plaintiff's causes of action against Berry under Title VII and the ADA should be dismissed.[2]

Further, Plaintiff appears to allege an age discrimination claim under the SCHAL rather than the ADEA.  Plaintiff argues that Berry qualifies as an "employer" under the plain language of that statute.  The definition of employer under the SCHAL is substantially equivalent to the definitions in Title VII, the ADA and the ADEA in that it defines employer as "any person who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." S.C. Code Ann. § 1-13-30.  The South Carolina Supreme Court has specifically held that South Carolina Human Affairs law is to be read consistent with similar federal law:

---

[2] Neither Lissau nor Baird contain the limitation based upon "personnel decisions of a plainly delegable character" as provided in Birbeck.  Birbeck, 30 F.3d at 511, n.1.  Nevertheless, even if the bar to individual liability under Title VII and the ADA is limited to delegable decisions, here Plaintiff alleges that Berry terminated his employment, which is "plainly delegable in character."  See Green v. Clarendon County School District Three, 923 F.Supp. 829, 848 (D.S.C. 1996).

> The South Carolina Human Affairs Law essentially follows the substantive structure of Title VII, and the enforcement agency for Title VII, the Equal Employment Opportunity Commission, is in all relevant and material respects analogous to the respondent commission. Under general rules of statutory construction, a jurisdiction adopting legislation from another jurisdiction imports with it the judicial gloss interpreting that legislation.

Orr v. Clyburn, 290 S.E.2d 804, 806 (1982). Furthermore, S.C. Code Ann. § 1-13-100 provides, "[n]othing in this chapter may be construed to create a cause of action against a person not covered by the Age Discrimination in Employment Act of 1967." S.C. Code Ann. § 1-13-100. As discussed above, individual defendants are not liable under the ADEA. Accordingly, Berry is not liable under the SCHAL

### 2.    The FMLA

The definition of employer is different under the FMLA than the statutes discussed above. It reads in pertinent part:

> (4) Employer
> (A) In general
> The term "employer"--
> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
> (ii) includes--
> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
> (II) any successor in interest of an employer;
> (iii) includes any "public agency", as defined in section 203(x) of this title; and
> (iv) includes the Government Accountability Office and the Library of Congress.
> (B) Public agency
> For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

29 U.S.C. § 2611(4). Section 203(x) defines "public agency" as:

> "Public agency" means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Regulatory Commission), a State, or a

political subdivision of a State; or any interstate governmental agency.

29 U.S.C. § 203(x).

The Fourth Circuit has not reached the issue of whether public agency officials can be sued in their individual capacities under the FMLA. See Jones v. Sternheimer, 387 Fed.Appx. 366 (4th Cir. 2010) (recognizing that the issue is "an open question in this circuit" but "express[ing] no opinion as to the viability of [plaintiff's] claim"). Other circuit courts are split on this issue. The Fifth and Eighth Circuits have concluded that public agency officials can be sued in their individual capacities. See Modica v. Taylor, 465 F.3d 174, 184–87 (5th Cir.2006); Darby v. Bratch, 287 F.3d 673, 681 (8th Cir.2002). The Sixth and Eleventh Circuits have concluded that FMLA suits against individual public officials are not cognizable. See Mitchell v. Chapman, 343 F.3d 811, 825–33 (6th Cir.2003); Wascura v. Carver, 169 F.3d 683, 685–87 (11th Cir.1999). Likewise, district courts within the Fourth Circuit are split. Compare Weth v. O'Leary, 796 F.Supp.2d 766, 776 (E.D.Va. 2011), Sheaffer v. County of Chatham, 337 F.Supp.2d 709, 728 (M.D.N.C. 2004); Cantley v. Simmons, 179 F.Supp.2d 654, 657 (S.D.W.Va.2002) and Knussman v. State of Md., 935 F.Supp. 659, 664 (D.Md.1996) (allowing individual liability) with Sadowski v. U.S. Postal Serv., 643 F.Supp.2d 749 (D.Md.2009); Miller v. County of Rockingham, 2007 WL 990135, *4 (W.D.Va. Mar. 30, 2007); and Keene v. Rinaldi, 127 F.Supp.2d 770 (M.D.N.C.2000) (rejecting individual liability).

Courts that allow individual liability point to the inclusion of the definition of employer "any person who acts, directly or indirectly, in the interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(I) (emphasis added). The District Court for the Eastern District of Virginia in Weth, for example, held that this language indicates "that individual liability on the part of managers, supervisors, and other individual officers of a larger company or public agency is appropriate." Weth, 796 F.Supp. at 776.

-8-

The Weth court further stated,

> [t]he definition of 'employer" under the FMLA also closely parallels that in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the FMLA's implementing regulations provide that "[a]s under the FLSA, individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA." 29 C.F.R. § 825.104(d) (2009) (emphasis added).

Id.

Courts that do not allow individual liability generally point to the structure or syntax of the definition of employer:

> First, there are four subsections in the FMLA that each add substance to the term "employer," but the subsections are distinct and independent from each other. Subsection (i) provides a general definition of the term "employer." See 29 U.S.C. § 2611(4)(A)(i) ("The term employer ... means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."). Subsections (ii) through (iv) further amplify the term "employer," and each of those subsections begins with the word "includes." Subsection (ii) contains the individual liability provision at issue herein. Subsections (iii) and (iv) both deal with public employers, i.e. "any 'public agency,' " and "the Government Accountability Office and the Library of Congress." See id. § 2611(4)(A)(iii), (iv). Thus, the subsection that provides for individual liability ( i.e. subsection (ii)) is separated from the subsection that provides for public agency liability ( i.e. subsection (iii)).

Sadowski, 643 F.Supp.2d at 754-55.

The undersigned agrees with those courts that hold a public official cannot be held individually liable for violations of the FMLA. As noted in Keane,

> an interpretation of the FMLA which would permit a mere supervising employee to be deemed an employer creates an, if not absurd, then an ironic situation where every person in an organization can be an employer of others except the person on the very bottom. By intermingling with and confusing the line between employer and employee, such an interpretation mainly serves to laden FMLA cases with personal disputes and antagonisms and matters of office politics. This result is both unnecessary and contra indicative of the purpose of the FMLA.

Keane, 127 F.Supp.2d at 776-77.

For these same reasons, the undersigned recommends that Plaintiff's FMLA claim against Berry be dismissed.

### B.    State Common Law Claims

#### 1.    South Carolina Tort Claims Act

Berry also argues that Plaintiff's state common law claims for wrongful discharge and defamation are barred by the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-70. The Tort Claims Act provides "the exclusive remedy for any tort committed by an employee of a governmental entity. An employee ... who commits a tort while acting within the scope of his official duty is not liable therefor...." S.C.Code Ann. § 15-78-70(a). A governmental employee may be sued individually only if "it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C.Code Ann. § 15-78-70(b).

In his wrongful discharge cause of action, Plaintiff alleges that "the Defendants directed Mr. Smith to institute a ticket quota system, requiring all patrolling officers to issue a set number of tickets for traffic violations per month, regardless of whether such violations occurred. . . . When Mr. Smith refused to implement such a system, the Defendants terminated Mr. Smith." Complaint ¶¶ 72, 74.  Plaintiff further alleges that Defendants "wrongfully and willfully discharged Plaintiff from his employment in violation of public policy." Complaint ¶ 76.

In his defamation cause of action, Plaintiff alleges Berry "intentionally uttered a false and defamatory statement to third parties when he told several individuals that Mr. Smith 'had not been putting forth full effort in his job for several years'" and that Berry made this comment "willfully,

wantonly, and with reckless disregard for the truth and for the sole purpose of wantonly injuring Mr. Smith without cause." Complaint ¶ 78-79.

Plaintiff sufficiently alleges an intent to harm in both his wrongful discharge and defamation claims to preclude dismissal under the South Carolina Tort Claims Act at this stage of the litigation.

### 2.    Defamation

Berry argues that Plaintiff has failed to sufficiently allege a cause of action for defamation. Berry argues that, because Plaintiff is a public figure, he must allege that Berry acted with knowledge of the falsity of his statements or that he acted with reckless disregard as to the truth of his assertions. Plaintiff alleges that Berry made the comment at issue with reckless disregard for the truth.

Berry also argues that dismissal is appropriate on Plaintiff's defamation claim because opinion is not defamatory. The Supreme Court rejected such a rule, finding "[w]e are not persuaded that, in addition to these protections, an additional separate constitutional privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment." Milkovich v. Lorain Journal Co., 497 U.S. 1, 21, 110 S.Ct. 2695, 2707 (1990). Berry relies on the United States Supreme Court's earlier decision in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997 (1974), for the proposition that "opinion is not defamatory." However, in Milkovich, the Court clearly identified this language in Gertz as "dictum" and "not intended to create a wholesale defamation exemption for anything that might be labeled opinion." Milovich, 497 U.S. at 18-19, 110 S.Ct. at 2705-06.

Finally, Berry argues that Plaintiff's defamation claim is barred by the doctrine of fair comment. However, the defense of fair comment does not apply to statements made with actual malice:

> When a libel action is brought by a public official against critics of his official conduct, the constitutional guarantees of freedom of speech and press prohibit the public official from recovering damages for a defamatory falsehood relating to his official conduct unless the libelous statement was made with actual malice that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

Scott v. McCain, 272 S.C. 195, 201, 250 S.E.2d 118, 120 (1978).  Here, Plaintiff has alleged Berry uttered the comment at issue with reckless disregard for the truth.

For these reasons, Plaintiff's allegations contain sufficient factual matter to state a defamation claim that is plausible on its face.  Therefore, it is recommended that Berry's Motion to Dismiss be denied as to Plaintiff's defamation cause of action.

**V.     CONCLUSION**

For the reasons discussed above, it is recommended that Defendant Berry's Motion to Dismiss (Document # 4) be granted in part and denied in part.  Specifically, it is recommended that the Motion be granted with respect to Plaintiff's claims under Title VII, the ADA, the FMLA, and the SCHAL and that the Motion be denied with respect to Plaintiff's claims of wrongful discharge and defamation.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 27, 2012
Florence, South Carolina

**The parties are directed to the important information on the following page.**